May it please the Court, I'm Todd McHenry and I represent Martel Mines. With this Court's permission I would ask for two minutes to be reserved for rebuttal. There are six issues before the Court. Of those six, I'm happy to answer questions on any of them. However, I'd like to focus the Court's attention specifically to the first two issues. The first issue being the trial court's sua sponte consideration of other crimes evidence. At the trial level the complainant testified that Martel Mines had, previous to the shooting, robbed him and hit him in the jaw with a pistol and that evidence at trial was considered as other crimes evidence against Mr. Mines. We're asking this Court to consider the second district court decision in Village of Kildare v. Monier, which is a 2008 decision. In that case, the second district faced a similar situation in which other crimes evidence was considered sua sponte by the trial court. I mean, that was in a situation where cases had been, there were three different charges, two of them were dismissed on a directed verdict and then the judge sua sponte considered them on the issue of willful and the defense lawyer didn't make a motion to eliminate to keep out any other crimes evidence, correct? That's correct. And the evidence came in without objection, am I correct? That's correct. And then the defense lawyer cross-examined the person who was shot and his brother extensively on the other crimes evidence and their use of, or their selling of narcotics to attack their credibility. That's correct. I mean, it seemed like a, by agreement, other crimes evidence was going to come in that it would be admissible. I'd like to just also address, wouldn't it have been admissible in this case clearly? Yes, Your Honor, I believe that it would have been admissible in this case. However, just as in the second district case, there, there were three separate crimes that the defendant was charged with and they agreed to try them all in one proceeding at a trial. And the decision in Munyer, the court specifically noted that there was no objection made there and presumably all the witness testimony at that one proceeding could have been used for any purpose there as well, just like in this case, presumably with no objection, a trier of fact can consider the evidence for whatever purpose they choose. Yet still, the court in Munyer decided that given there was no objection, that clearly the issue was forfeited in their view, but they still analyzed the issue under plain error and they came to the conclusion that it's not the fact that this evidence was somehow improper. In fact, they stressed that even in that case, that evidence would have been relevant to prove the mental state that would have been material in that case. So they went out of their way to say that the first step is to determine whether or not the evidence could come in properly under other crimes. In that case, just like ours, presumably it could have. Then the next step is, does the fact that it was considered sua sponte, what relevance does that fact play in whether or not there was an error committed? And that's where the court admitted that there were very few cases directly on point and did sort of a, almost a continuum of other cases where the defendants had alleged that the trial court had exceeded its proper neutral role and gave the appearance of being an advocate of the state. And the court in Munyer determined that it's the fact that there was, as in these other cases, there were two cases that were more egregious in their view than the present facts of Munyer. And they specifically cited, you know, the fact that when the issue comes up, it's one thing if the trial court says, you know, state, is this an issue I should be considering? Defense, do you have a response to this? And promote a dialogue at that point. That's one thing. And they presumably encouraged that type of discourse. But the Munyer court had issue with sort of bringing up an issue without putting it out there for the parties really to deal with or inviting any sort of invitation or response from the parties. And instead just saying, going forward, I'm going to consider this as other crimes. What if the judge hadn't said a thing? If the judge hadn't... Then wouldn't he be saying the attorney was ineffective for failing to tell the judge to make a ruling that he was only considering this for the purposes of showing intent? And the judge here, I mean, something that I would do would be to make my record and to put on the record, I'm not considering this for anything other than this issue. So don't raise this issue in a post-trial motion or in a post-conviction petition or on appeal for ineffective assistance because I'm only using it the way that I'm allowed to use it. When the evidence has been introduced by the state without any objection from the defense. Correct, Your Honor. And I'm sympathetic to that view. And had the trial court said nothing at all about it, there would have been a potential to raise an issue of ineffective assistance of counsel, certainly. In this case, we're viewing what the trial court, what the judiciary is actively doing and giving the impression that they're doing. And so we are focusing, just like the Monier Court, on not what they could have done had they said nothing, but what impression did the court give when it, sua sponte, decided to consider this evidence as other crimes, which is typically brought out by the state. And usually there's a response made by defense counsel at that point, at least an opportunity to respond. What about continuing coercive conduct in the state? Wouldn't it have to raise the issue of other crimes? Correct. There could have been a variety of ways that the evidence would have been relevant, would have been material, and could have come in. We're not disputing the relevance. So you're saying just because the judge made a record, it's an error? Well, we're saying that the manner in which the record was made is an error because I believe that the holding of people versus Monier would state that there's no problem necessarily with a trial court saying, listen, is this an issue, counsel, can I consider this for other crimes evidence, should I consider it for that, and get a response or invite a response from the parties. Monier is definitely not saying that a judge cannot create a record and protect themselves. They certainly can. But when they're doing it, Monier would certainly stand for the proposition that they need to be careful that they're not appearing to act on their own as an advocate of the state. And I'm certainly sympathetic to those views, but in this case we would have wanted the trial court to at least inquire a little bit about the record and ask for a response from defense counsel at that point. If there are no further questions on that issue, I'd like to move to the second issue, which is the failure of the state to provide adequate notice pursuant to Section 111-3 of the Criminal Code of the 25-year-old... And I only want to stop you so that you'll address it when you get to this issue. Are you saying, because I'm not clear from the record, that the state had to allege the particular words, quote-unquote, personally discharged a firearm, and personally discharged a firearm that proximately caused rape by layup? We are. The precise words. We are. All right. And we also, to be clear, in the alternative, we do argue that if this court believes and finds that there is sort of substantial compliance with one of the various firearm enhancements, we in the alternative would ask this court that certainly the most severe one, the 25 years to natural life, which requires the great bodily harm notice, that wasn't referred to at all. The indictment did have a statement that for the charge of attempted murder that Marchall Mines shot the victim. About the body with the firearm. Turning to the issue, we do believe that the clear purpose and intent of the statute is to provide a defendant with pretrial notice at some point before trial of the fact that the state is going to proceed to seek a sentencing enhancement based on the particular facts necessary to be proved beyond a reasonable doubt. In this case, Marchall Mines received a 25-year enhancement for the use of a firearm personally discharged that resulted in great bodily harm. There was no reference to the amount of harm in the indictment. There was only the reference to being shot about the body in the indictment itself. For these purposes, it's relevant and important that a defendant and accused have pretrial notice of this intent because the state, the prosecution, obviously has great latitude in how they prosecute the crimes and what crimes they're seeking and whether or not they're seeking a And so while typically an indictment would mirror the language used, that specific language that we're advocating should have been used in the indictment, that typically communicates what the state is intending to do. And in this case, the fact that, you know, at trial even, I mean, the amount of damage was extensive to Mr. Richardson. There's no questioning that in the record itself. However, the fact that they chose not to include any reference to that in the indictment itself is a signal that they are not going to be seeking the 25 years to natural life. And in this case, that sentencing enhancement was significant relative to the punishment for the underlying offense in that it was in excess of the punishment. So he received 20 years for the attempted first-degree murder and 25 years in addition to that for the sentencing enhancement. Can I ask you an additional question? In reading the transcript, the defense lawyer said at the time of sentencing, when the judge raised the issue of what the sentencing range was, the defense lawyer correctly stated that for attempted murder it was 6 to 30 and the enhancement was 25 to life. Correct. And that followed, there was first at the sentencing hearing, in aggravation, the state made no reference to the fact that they were seeking an enhancement. Oh, I know they didn't. I'm the defense lawyer. Correct, Your Honor. I'm just trying to set the stage that after that, the judge then was the first person in the courtroom to bring up the enhancement. And the judge first said, isn't the client subject to 20 to 80 years plus 25-year sentencing enhancement? After that point, Your Honor, certainly correct. Defense counsel stated correct range should be 6 to 30 plus the 25-year enhancement. However, the requirements of the statute are pretrial. And whether defense counsel knew at some point later, you know, after trial and at sentencing, that does not comply with the state's demand pretrial to provide notice to an accused. I just have one more question on that. I know the statute says notice and that statutorily prior to trial, if the issue is raised, then there's a stricter standard. But after trial, the standard is completely different. In this particular case, do you think, well, how do you address the fact that prior to trial, at a bond hearing, that the, when the defendant was trying to get his bond raised, that the state objected, or his bond lowered, that the state objected he shouldn't get his bond lowered because he's paralyzed, shot the victim and paralyzed the victim? But in this case, we're not disputing the fact that the injuries were extensive. The record establishes that clearly. And I think it would be disingenuous to suggest that there wasn't some information that certainly the complainant was severely hurt and injured through the crime. However, given that the state has great latitude in what they seek to prosecute and how they seek to prosecute it, given the facts, just because the facts, you know, some of the facts were known, does not mean that you had noticed that I'm going to be charged this way and therefore I may, as an accused, exercise very fundamental trial rights. I can request a bifurcated hearing pursuant to Illinois Supreme Court rules in which I can exercise the right to testify or not, the right to have a jury hearing or not. No person in their right mind had a bifurcated hearing. You and I know that. In this particular case, no one would have. But I was just trying to hone in on to your argument. It's because your argument is not in the indictment. The facts that allow the great bodily harm charge are not in the indictment. Even though there's a different standard after a trial for you to raise this issue, you don't think that it's met after a trial. It doesn't allow the defense to, well, it prejudices. That's correct. The requirement for pretrial notice is important, given the rights that I mentioned before. Plus, an accused needs to know what the potential range here, not just the theoretical potential, but this is what the state is seeking to do. This is what we want to do. Having knowledge of that information can be quite material to a defendant in how they want to proceed. Counsel, because there have been many questions to you, I'm giving you some leeway. Are there other issues that you need to address? Those are the two issues that I specifically wanted to address. However, if this Court wants to inquire about, I know there was supplemental briefing argued in the Second Amendment issue. If this Court wants me to address further questions, I'm happy to do so. I just have one. Yes, Your Honor. What do you think should be the level of our review on this issue? Should we use strict scrutiny, intermediate scrutiny, or rational basis? On the, pursuant to the Second Amendment issue, we're certainly, we're not abandoning our argument for strict scrutiny. However, the reality is that the case law, as it's developing on this issue, seems to be fairly clearly heading towards some form of heightened scrutiny. And intermediate scrutiny has been employed by the First District on several occasions. And it seems to be that where the question now seems to be, the Second Amendment appears to apply in some form or fashion outside of the home. And the question is, you know, to what extent and to what extent it can be regulated. Is Aguilar the latest? It's the latest. And that utilizes the intermediate. That's correct. And under intermediate scrutiny, the dissent, Justice Neville, in that case, actually would have found that the aggravated UUW statute was unconstitutional, as it was disproportionately broad to its objective. And the majority, however, did employ intermediate scrutiny, and they upheld the regulation. All right. Thank you, Counsel. Thank you, Your Honor. Good morning. May it please the Court, Robin Murphy on behalf of the people of the State of Illinois. Now, as to the first issue that was previously addressed, Your Honor, it's the State's position that the evidence of the earlier incident was admissible and properly considered by the trial court, and there was no display of judicial bias, whether it was in fact or whether it was in appearance. The State would first offer that this issue was in fact forfeited by defense counsel because he did not object at trial, he didn't object at sentencing, and he didn't object at his post-trial motion, especially given the fact, as Justice Lamkin indicates, the defense counsel's trial was going into this issue equally as much as the prosecutor was. So for a defendant to wait until appeal and to bring this issue up is a misplaced remedy that he is seeking. If this Court even would excuse the forfeiture, he cannot bear his burden to show that a plain error occurred. For a plain error to occur, the defendant must show a clear and substantial error in this case. And all the evidence in the record is that the trial court did not abuse its discretion in limiting itself to evidence at the time of trial that he stated was other crime evidence, but it's the State's position today that this evidence was generally admissible evidence. This evidence told the story of what happened. It placed the actors on the scene at the time. And, Your Honor, there was another crime in this case that wasn't charged, but it was so closely intertwined to what happened to the charge case that this case, this evidence is simply generally admissible evidence because it was part and parcel with the charge conduct. Now, without this narrative of what happened before, and it seemed to happen pretty, it happened soon before the charge incident occurred. There was evidence that the witness was robbed. He admitted that he was selling heroin. He identified the defendant as the person who hit him with the gun and then stole his money and stole his drugs. At that point, the witness immediately calls his brother. His brother comes to the scene. He goes into his brother's car. He gets out of his brother's car and goes looking out for the defendant, in this case, who he soon sees and who shoots him. You said he went looking for the defendant. I didn't see that. I saw that he went upstairs and that he saw the defendant coming across the walkway. It was my recollection of the testimony at trial that when he goes into that other building, he first starts out at 2330 South State Street, goes into 2440, walks up to the stairs, goes out to the second floor window, looks out the window, sees his brother in a crowd of people, including one individual named Boo Man, who was not the defendant. Tanksley. Correct. At that point, he comes down and he sees the defendant for the first time since he was prior. That's very different from he went looking for the defendant. That could be an inference that could be adduced by the trial court. But that was evidence that the judge had to hear because without that evidence, he would have no idea what brought the victim to that building that he didn't live in, why his brother was called to the scene because his brother also testified, so what his brother was doing at the scene, and why a defendant would pull out a gun and shoot a victim without any words or provocation. And in the Miranda statement that was admitted at trial, the statement was that the defendant said he thought the victim was reaching for a gun. Well, why would he think the victim was reaching for a gun if there wasn't this prior incident that happened? So, therefore, it's the state's position that this was part of the story of what happened. And as to the Munyer case, the Kildeer v. Munyer, as Justice Lamkin indicates, it's a separate incident from what we have here. Even the court said, you know, this ruling is based on the circumstances of this case, a very unique circumstances of this case, that three separate indictments, different time, different place, different day, different victim, charging different indictments, and they were heard at the same time. I believe there was a September 18th incident, a October 7th incident, and a October 9th incident, an undirected verdict, the October 7th and the October 9th cases were directed out. So the key is while those cases were presented to the court, those incidents were charged conduct. It wasn't uncharged conduct. So, therefore, the defense at that time had no opportunity to say, judge, I object, this is other crime evidence, because at the time the judge is hearing it, it was charged conduct. And in this case, as I stated before, it's closely intertwined with the charged conduct. In Munyer, those other cases don't really explain the circumstances of the case that was eventually, that eventually defendant was found guilty upon. Your Honor, defendant also makes the argument that, you know, there's this display of judicial bias. But first I would say there's no judicial bias if the judge is just trying to hear the full story of what happened. And, indeed, in the Munyer case, the crux of Munyer, as the trial court stated, was the trial court created the appearance that it was assisting the prosecution of the defendant by admitting the other crime evidence without seeking the village's input and allowing defense counsel to respond to the village's argument. So in this case we have that. The defendant had every opportunity to object. I'm sorry. Allergies don't work. He had every opportunity to object. And, as I stated before, he goes into it just as much as the state does, trying to cast the victim in an unfavorable light. So it's, in effect, giving him two bites of the apple, letting this testimony in that in some ways is helpful to his case. In fact, he argues in his closing argument that the victim put himself in harm's way because he was selling heroin. Without that evidence, that simply would not have benefited him. So for it to benefit him at trial and then later to complain about it is, in effect, giving him two bites of the apple. And, as I stated before, the appearance is whether or not a defendant has an opportunity to object. That goes into that analysis of what a neutral observer, if a neutral observer is in court he would have those same questions if that evidence was presented without that prior incident. So there's no way a neutral observer could think there's bias when he just thinks that the judge is simply getting the story. And I'd ask your honors to look at the cases cited in the People's Brief. There's Collette and People v. Lewis. And in both of those cases it was ruled that other crimes was proper narrative evidence that was admissible. But upon a further close reading of those cases, there was no motion presented to the court to either admit or keep out other crime evidence. So I believe defendant is trying to distinguish our case from that case, saying in our case the judge was acting sua sponte. But if you read those opinions, it was narrative evidence of what was happening for the charged conduct and there was no motion. So the judge in those cases was in effect sua sponte considering that evidence, whether it was other crime evidence relevant to show the story of what happened or that it was simply admissible evidence. Now if there are no other questions as to the first issue, I will discuss the second issue as to whether the 25-year enhancement was proper. Your honors, defendant has forfeited this issue as was indicated by Justice Lampkin. There was no objection at sentencing or in the motion to reconsider sentence. And the standard is that if an indictment is attacked for the first time on appeal, a defendant must show prejudice. And in this case, defendant is unable to show prejudice when the state complied with all the statutory requirements for sentencing. That he was sentenced within the range of the class acts of the 6 to 30 years he was sentenced for 20 years. That he was given a 25-year enhancement for personally discharging a firearm causing great bodily harm or permanent disability. And he can't show prejudice when, as stated by Justice Lampkin, that during the sentencing hearing it was the defense counsel who pointed it out to the judge that the proper enhancement was a 25-year enhancement. And that just shows that everyone was operating under the same belief that the state would be seeking that 25-year enhancement. In addition, and in fact, when he was making his recommendation to the court, your honor, we'd ask for the minimum. That prejudice would have been indicated by an effective assistance of counsel. Isn't it something that he could have raised since his own counsel was the one who raised this issue? That is correct. That could have been grounds for perhaps an effective assistance of counsel claim, but there was no effective assistance of counsel claim before the court in the defendant's brief. As I stated, he asked- Wasn't the defendant attorney's comments in response to the judge having indicated a greater enhancement of 30 years? My recollection of- I think the judge misstated the attempt murder. The attempt murder was 60-30 and the judge said 20-80. 20-80, correct. And at that point the defense counsel corrected him, stating, your honor, I believe what we have here is a 25-year enhancement. So then he was simply correcting a misstatement of the court. He wasn't trying to then add on or representing. He wasn't engaging in an effective assistance, and he was simply trying to correct the statute as he knew it. Correct the misstatement of the court. I mean, in context, that's very different from what you represented, that the counsel was the one who brought up the issue of the 25 years. In context, he's simply correcting the court. That's very different. Right, right. That's what he was doing. The judge misstated what the sentencing range was, and he stated what the sentencing range was. But in that statement he states what, in fact, the state was looking for in that enhancement. And what he had noticed of, based on the language of the indictment, which states that he shot Leonard Richardson about the body with a firearm, and there's no cases that could be found cited by a defendant that states that an indictment has to exactly track the language of the enhancement statute. And also the fact that the victim was a double amputee quadriplegic in a wheelchair in court is further indication that this was a case of great bodily harm, permanent disability. The statute only requires that an alleged fact must be included in the charge. I understand that he was a double amputee as a result of bed sores, not as a direct result of the wound being shot at, what was it, T6 in the spine. Correct. But that was a subsequent decision because of bed sores on the legs. Correct. The amputee aspect may not have been a direct relationship, but it was still causation, I believe, and it was proper aggravation. And the fact that somebody shot about the body several times with a firearm, that in and of itself is going to be great bodily harm or permanent disability. And if there are no further questions for these reasons and the reasons contained in the People's Brief, we ask that you affirm the decision of the trial court and affirm defendant's conviction. I did have one question, the same question I had. Oh, I'm sorry. Hold on. I'm sorry, go ahead. If we determine that there is some Second Amendment protection for having a firearm on the outside of the home, what do you believe should be our level of scrutiny? Your Honor, it's the state's position today that the proper standard is intermediate standard. That was the standard that was adopted by the recent cases by this court, by the 3rd Division in Aguilar and the 6th Division in Ross. Those cases cited relevant federal cases since the Heller and McDonald decisions, and those federal cases adopted an intermediate scrutiny of standard. So the state's position is that an intermediate scrutiny is proper, that the statute must be substantially related to an important government objective. And it's our position in that case. In this case, that preventing gun violence is in fact indisputably an important government objective. In your research, have you found any cases that utilized a standard other than intermediate? Your Honor, I have. There were posts after the Heller and McDonald opinions by the Supreme Court. This court, the 3rd Division and the 4th Division, and people v. Dawson and people v. Williams, adopted a rational basis standard. That's what I thought. Yeah, that's correct. Dawson was rational basis. Was rational basis. Those cases followed the cases before... Dawson and which one? It's people v. Dawson, that was the 3rd Division. Yeah, but the other one. People v. Williams was the 4th Division. So they followed cases that predated Heller and McDonald, that upheld the statute based on a rational basis. So it's the state's position that whatever scrutiny is utilized, this statute fairly passes constitutional muster. And in response to Justice Neville's dissent in Aquila, he takes issue with that? Your Honor, it's the state's position that the majority was correct in that case in stating that the Second Amendment either does not apply when someone is beyond the home. And that's what the Heller and McDonald decisions were grounded upon. That the Second Amendment protections only provide one protection if one is in the home possessing a handgun. And it's for the use of self-defense. And what's that other phrase? It wasn't just in the home, but possessed of? I'm sorry, I'm sorry. The Second Amendment only attaches for possessing a handgun within one's home and for self-defense. And that's what Heller and McDonald make clear. Whether the boundaries of the Second Amendment jurisprudence now following Heller and McDonald, there's a bit of uncertainty. But no court has held that it is a fundamental right for one to possess a handgun, a loaded handgun, outside of the home. What about in the office? I thought the other part of Heller was not just in the home, but it was something like premises licensed to the persons, something similar to that. And that is certainly outside of the home. That's correct, Your Honor. That very well may have been the case. However, for the purposes of the statute that this Court is analyzing today, this statute provides Second Amendment protection because the aggravated unlawful use of a weapon statute encompasses a home, legal dwelling, fixed place of business, or land dwelling of another as an invitee. So even if the Second Amendment were to attach to a business, this statute is clearly within those grounds. What about the holding in the Aguilar dissent that this statute may be too broadly written? Your Honor, again, it's the State's position that the majority got that case correct because the majority grounded its decision on those Heller and McDonald cases and that not only, as I stated before, not only does this statute clearly provide, it provides the exception except when on his or her land or his or her own abode. And it adds legal dwelling, fixed place of business, or land dwelling of another as an invitee. So based on the fact that it almost expands an individual who is possessing a gun, his Second Amendment, he expands his protection beyond the Second Amendment that there can't be a determination that this statute is overly broad. This statute clearly... It's also limited in what type of arms it's talking about outside that home, too, as well, uncased. Right, right. The statute further specifies that a firearm may be possessed outside the home if it's not uncased, loaded, and immediately accessible. So any of those would provide an exception. You can carry a loaded gun in your glove compartment. You can carry a loaded gun for case law in the... As far as if it's closed, you can carry it in your trunk loaded. So you can carry it outside the home. With the current statute, you just can't carry it uncased, loaded, and immediately accessible. Correct. For these reasons and the reasons contained in the people's brief, we ask that you affirm the decision of the trial court and affirm defendant's convictions. Thank you, counsel. Rebuttal? Just two brief points on rebuttal. First, with respect to the second issue regarding the firearm enhancement, our position that we've argued for in the briefs is that that was a void sentence. And so, therefore, the fact that it was not objected to at the time should not stop this court from reviewing that issue. Additionally, under plain error, certainly being sentenced above and beyond what the state had indicated they were going to sentence you on would qualify as a substantial right that had been implicated at that point. So we would say that it also qualifies under plain error at that point. With respect to the Second Amendment questions and answers, just briefly to clarify, I'm sorry, if I may move back one moment to the firearm enhancement. There was one point made, and I just wanted to clarify it based on my notes of the record. At the sentencing, the judge was the first person to bring up the 25-year enhancement, and he brought it up in the context of isn't the defendant subject to 20 to 80 years plus 25 years? So just to clarify that, the 25 years did first come from the trial court, and then defense counsel confirmed, no, it's 6 to 30 plus 25. So just to clarify, with respect to the Second Amendment issue, and in analyzing People v. Aguilar, we would just note that while the majority did uphold the regulation in question, it does not stand for the proposition that the Second Amendment categorically does not apply outside of the home. That position, you know, it clearly abandoned the earlier rational basis test that was applied, and the fact that the court no longer applied rational basis but applied intermediate scrutiny suggests that there is certainly a constitutional right that is implicated outside of the home. It's just now a question of, okay, when it's implicated, does the regulation pass the Second Amendment or not? And the majority found that it did, and the dissent clearly disagreed. For those reasons, we conclude. Thank you. Thank you, counsel. This matter will be taken under advisement. This court is adjourned.